ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/9/2025 10:03 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

In the Fifteenth Court of Appeals
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/9/2025 10:03:13 PM
CHRISTOPHER A. PRINE
Clerk

CECILE ERWIN YOUNG,
in her Official Capacity as the Executive Commissioner
of the Texas Health and Human Services Commission

Appellant,

vs.

COOK CHILDREN'S HEALTH PLAN, et al.,

Appellees.

Appeal from 353rd Judicial District Court
Travis County, Texas

# Brief of Appellee
# Wellpoint Insurance Company

Michelle Y. Ku
Texas Bar No. 24071452
mku@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000
Fax:  214.999.4667

Robert F. Johnson III
Texas Bar No. 10786400
rjohnson@foley.com
Foley & Lardner LLP
600 Congress, Suite 3000
Austin, Texas 78701
Tel:   512.542.7000
Fax:  512.542.7100

Counsel for
WellPoint Insurance Company

**Oral argument requested**

# List of Parties and Counsel

**Appellate and Trial Counsel for Wellpoint Insurance Company:**

Michelle Y. Ku
mku@foley.com
Stacy R. Obenhaus
sobenhaus@foley.com
Brantley Smith
bsmith@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000

Robert F. Johnson III
rjohnson@foley.com
Foley & Lardner LLP
600 Congress, Suite 3000
Austin, Texas 78701
Tel:   512.542.7000

Of counsel:
Benjamin J. Grossman
bjgrossman@foley.com
106 E. College Ave., Suite 900
Tallahassee, Florida 32301
Tel:   850.222.6100

Wellpoint otherwise adopts the list of parties and counsel of the parties to this appeal.

# Table of Contents

List of Parties and Counsel.................................................................................... 2

Table of Contents ................................................................................................... 3

Index of Authorities ............................................................................................... 4

Statement of the Case............................................................................................ 9

Statement Regarding Oral Argument................................................................... 9

Issues Presented................................................................................................... 10

Statement of Facts................................................................................................ 11

Summary of Argument........................................................................................ 20

Argument .............................................................................................................. 24

    I.      The Trial Court Has Subject Matter Jurisdiction........................... 24

        A.     Wellpoint's claims are ripe. ...................................................... 24

        B.     Texas courts have not made exhausting administrative remedies a condition precedent to filing ultra vires claims........ 29

    II.    The Trial Court Properly Enjoined The Commissioner. ................ 35

        A.     Wellpoint will likely prevail on its ultra vires claims................. 38

           i.    Evidence supports findings that the Commissioner exceeded her powers by acting without legal authority. ......... 38

           ii.    Evidence supports findings that the Commissioner exceeded her powers by ignoring statutes requiring specified actions. ................................................................ 43

           iii.    Wellpoint seeks only prospective relief................................. 57

           iv.    Wellpoint asserted other valid ultra vires claims................... 58

        B.     Equity favors Wellpoint—and the citizens of Texas. ................. 58

        C.     The injunction satisfies Rule 683. .............................................. 63

        D.     Excluding the Commissioner's hearsay was proper and, in any event, harmless. ................................................................ 65

Prayer ................................................................................................................... 69

Certificate of Compliance ................................................................................... 70

# Index of Authorities

## Federal Cases

*Axon Enters Inc. v. FTC*
  598 U.S. 175 (2023) ............................................................................ 29

## State Cases

*Andrade v. NAACP of Austin*
  345 S.W.3d 1 (Tex. 2011) .................................................................... 26

*Brennan v. City of Willow Park*
  376 S.W.3d 910 (Tex. App.—Fort Worth 2012, pet. denied) ................... 29

*Butnaru v. Ford Motor Co.*
  84 S.W.3d 198 (Tex. 2002) ................................................................... 59

*Cities of Corpus Christi v. Public Utility Comm'n of Tex.*
  188 S.W.3d 681 (Tex. App.—Austin 2005, pet. denied) ......................... 42

*City of Austin v. Whittington*
  384 S.W.3d 766 (Tex. 2012) ................................................................. 38

*City of El Paso v. Heinrich*
  284 S.W.3d 366 (Tex. 2009) ................................................................ 39

*City of Hous. v. Hous. Mun. Emps. Pension Sys.*
  549 S.W.3d 566 (Tex. 2018) ........................................................ passim

*Coastal Liquids Transp. LP v. Harris Cty. Appraisal Dist.*
  46 S.W.3d 880 (Tex. 2001) ................................................................... 25

*DaimlerChrysler Corp. v. Inman*
  252 S.W.3d 299 (Tex. 2008) ................................................................ 26

*Fed. Sign v. Tex. S. Univ.*
  951 S.W.2d 401 (Tex. 1997) ................................................................ 30

*Franka v. Velasquez*
  332 S.W.3d 367 (Tex. 2011) ................................................................ 39

*Haedge v. Cent. Tex. Cattlemen's Ass'n*
603 S.W.3d 824 (Tex. 2020) ............................................................... 36

*Hall v. McRaven*
508 S.W.3d 232 (Tex. 2017) ......................................................... 39, 63

*Harris Cnty. v. Smith*
96 S.W.3d 230 (Tex. 2002) .................................................................. 66

*Henry v. Cox*
520 S.W.3d 28 (Tex. 2017) ................................................................... 36

*Horton v. Kansas City S. Ry.*
692 S.W.3d 112 (Tex. 2024) ................................................................. 66

*In re Est. of Poe*
648 S.W.3d 277 (Tex. 2022) ................................................................. 66

*In re Luther*
620 S.W.3d 715 (Tex. 2021) ................................................................. 65

*In re State*
711 S.W.3d 641 (Tex. 2024) ................................................................. 61

*Indep. Cap. Mgmt. LLC v. Collins*
261 S.W.3d 792 (Tex. App.—Dallas 2008, no pet.) ............................... 64

*Jernigan v. Langley*
111 S.W.3d 153 (Tex. 2003) ................................................................. 33

*Kilgore ISD v. Axberg*
535 S.W.3d 21 (Tex. App.—Texarkana 2017, no pet.) ........................... 29

*Matzen v. McLane*
659 S.W.3d 381 (Tex. 2021) ......................................................... 46, 63

*Mosley v. Tex. Health and Human Servs. Comm'n*
593 S.W.3d 250 (Tex. 2019) ................................................................. 53

*Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*
925 S.W.2d 659 (Tex. 1996) ................................................................. 25

*Perry v. Del Rio*
66 S.W.3d 239 (Tex. 2001) ................................................................... 26

*Phillips v. McNeill*
   635 S.W.3d 620 (Tex. 2021) ................................................................ 39

*Point Energy Partners Permian LLC v. MRC Permian Co.*
   669 S.W.3d 796 (Tex. 2023) .............................................................. 24

*Riner v. City of Hunters Creek*
   403 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ..... 29, 30

*Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*
   646 S.W.3d 329 (Tex. 2022) ............................................................... 39

*State ex rel. Office of Att'y Gen. of Tex. v. City of San Marcos*
   714 S.W.3d 224 (Tex. App. [15th Dist.] 2025, pet. denied) .................... 44

*State v. City of Austin*
   714 S.W.3d 247 (Tex. App. [15th Dist.] 2025, pet. filed) ........................ 58

*Strayhorn v. Lexington Ins. Co.*
   128 S.W.3d 772 (Tex. App.—Austin 2004) ............................................ 29

*Sw. Bell Telephone, L.P. v. Emmett*
   459 S.W.3d 578 (Tex. 2015) ............................................... 39, 44, 45, 48

*Tex. Educ. Agency v. Houston ISD*
   660 S.W.3d 108 (Tex. 2023) ............................................................... 35

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*
   74 S.W.3d 849 (Tex. 2002) ................................................................. 30

*Univ. of Tex. Med. Sch. at Hous. v. Than*
   901 S.W.2d 926 (Tex. 1995) ................................................................ 53

*Wilson v. Cmty. Health Choice Tex., Inc.*
   607 S.W.3d 843 (Tex. App.—Austin 2020, pet. denied) ....... 32, 37, 38, 39

*Winfrey v. Chandler*
   318 S.W.2d 59 (Tex. 1958) ................................................................. 36

## State Constitution and Statutes

Tex. Const. art. I, § 19.........................................................................53

Tex. Const. art. V, § 8 .........................................................................36


Tex. Gov't Code § 24.011 .....................................................................36

Tex. Gov't Code § 311.016..........................................................40, 45, 48

Tex. Gov't Code § 532.0051 ..................................................................11

Tex. Gov't Code § 536.052(b) ...............................................................45

Tex. Gov't Code § 536.052(d) ..........................................................47, 48

Tex. Gov't Code § 543A.0001 ...............................................................47

Tex. Gov't Code § 543A.0052(b) ...........................................................45

Tex. Gov't Code § 543A.0052(d) ......................................................47, 48

Tex. Gov't Code § 552.001..............................................................28, 50

Tex. Gov't Code § 552.002....................................................................50

Tex. Gov't Code § 552.003....................................................................50

Tex. Gov't Code § 552.021 ....................................................................50

Tex. Gov't Code § 552.022....................................................................50

Tex. Gov't Code § 552.0222 ..................................................................50

Tex. Gov't Code § 552.221 ....................................................................50

Tex. Gov't Code § 552.223 ....................................................................52

Tex. Gov't Code § 552.321(a).................................................................51

Tex. Gov't Code § 2155.076 ..................................................................54

Tex. Gov't Code § 2155.076(a)...............................................................54

Tex. Gov't Code § 2155.144(c) ...................................................................60

Tex. Health & Safety Code § 62.051 ..........................................................11

**State Rules**

Tex. R. App. P. 9.7 ................................................................................ 9, 58

Tex. R. App. P. 43.4 ...................................................................................69

Tex. R. App. P. 44.1 ............................................................................. 66, 67

Tex. R. Civ. P. 683 ......................................................................................63

**State Regulations**

1 Tex. Admin. Code § 391.101...................................................................54

1 Tex. Admin. Code § 391.103(a) .............................................................54

1 Tex. Admin. Code § 391.107...................................................................54

1 Tex. Admin. Code § 391.301...................................................................54

1 Tex. Admin. Code § 391.303(b) .............................................................55

1 Tex. Admin. Code § 391.305 ..................................................................55

1 Tex. Admin. Code § 391.305(c)(3) .........................................................34

1 Tex. Admin. Code § 391.307(d) .............................................................56

1 Tex. Admin. Code § 391.307(d)(1) .........................................................55

## Statement of the Case

Wellpoint adopts the Statement of the Case in the briefs of the other appellees in this appeal. *See* Tex. R. App. P. 9.7.

## Statement Regarding Oral Argument

Wellpoint believes this Court would benefit from oral argument due to important issues this appeal raises regarding, e.g., ripeness of claims and ultra vires conduct in the procurement of government services.

# Issues Presented

The Commissioner raises these issues:

1.      Are Wellpoint's ultra vires claims ripe?

2.      Did Wellpoint need to exhaust administrative remedies before it asserted these ultra vires claims—and if so, did Wellpoint do so?

3.      Is the temporary injunction improper because:

(a) Wellpoint has no valid ultra vires claims and therefore is not likely to succeed on the merits?

(b) the balance of equities favors the Commissioner?

(c) the injunction doesn't satisfy Rule 683?

(d) the trial court excluded relevant evidence?

## Statement of Facts

As discussed in the extensive briefing and other submissions filed by the appellees in this case, including Wellpoint's motion for injunctive relief pending appeal (July 10, 2025), the Texas Health and Human Services Commission ("HHSC")—under a statutory mandate to implement a "Medicaid managed care system," Tex. Gov't Code § 532.0051, and a separate statutory mandate to "administer a state-designed child health plan program to obtain health benefits coverage for children in low-income families," Tex. Health & Safety Code § 62.051—administers a variety of publicly-funded healthcare programs in Texas, including the ones at issue in this lawsuit—STAR, CHIP, and STAR Kids. Cecile E. Young, in her capacity as HHSC's Executive Commissioner, issued Request for Proposals No. HHS0011152 (the "RFP") in order to invite managed care organizations ("MCOs") to submit proposals for contracts to provide administration and beneficiary services through these STAR and CHIP programs in all of Texas's thirteen service areas (P. Ex. 38). Each appellee—Wellpoint, Superior HealthPlan Inc., Cook Children's Health Plan, and Texas Children's Health Plan—is an MCO that separately participated in that proposal solicitation process.

During the RFP process, the Commissioner acted ultra vires in ways that threaten to irreparably harm plaintiffs-appellees, the State of Texas, and

program beneficiaries who include some of the most economically and socially vulnerable Texas citizens (CR 4231-86). The Commissioner's actions in the STAR and CHIP procurement—and the pending STAR Kids procurement—are part of a continuing pattern of unlawful behavior that deprives these vulnerable populations of meaningful MCO choices by replacing proven, high-performing plans like Wellpoint with underqualified MCOs.

Wellpoint—formerly Amerigroup Insurance Company (8 RR 89)—is an MCO that currently provides managed care services to the State of Texas in connection with the STAR, CHIP, STAR Kids, and STAR+PLUS programs (8 RR 65). Wellpoint has consistently, for over a decade, advocated for improvement of HHSC's procurement process to ensure a fair, transparent, and competitive process and one that follows all applicable laws (8 RR 92). Wellpoint has also repeatedly exhausted HHSC's administrative protest and appeals processes in connection with numerous procurements—raising again and again the illegalities of many of the same ultra vires acts that persisted into the STAR and CHIP procurement and are now at issue here—only to have each of those challenges denied (8 RR 70-84, 86-105; P. Ex. 160 [056-57]).

Wellpoint submitted a proposal to provide STAR and CHIP managed care services pursuant to the RFP (P. Ex. 38; P. Ex. 236). Before submitting

it, however, Wellpoint filed a specifications protest to the solicitation's terms challenging the legality of the procurement's framework and the award of contracts that would result from it, as well as HHSC's authority to conduct the RFP as published (8 RR 70-72; P. Ex. 44). Despite HHSC staff drafting a proposed addendum to the RFP that would have resolved at least the unauthorized awarding of mandatory CHIP contracts that Wellpoint's specifications protest had challenged (P. Ex. 44; P. Ex. 46; P. Ex. 266), HHSC elected not to adopt the addendum and denied the protest in its entirety, thereby deliberately choosing instead to move forward with the RFP as originally (and illegally) drafted (P. Ex. 160 [087-88]). Wellpoint appealed the protest denial to the Commissioner (P. Ex. 160 [089-104]). The Commissioner denied the appeal and proceeded with the illegal procurement anyway (5 RR 111-19; 8 RR 70-79; P. Ex. 160 [105-07]).

After completing the evaluation and scoring process, the Commissioner issued her notice of intent to award new STAR and CHIP contracts and proposed contract awards for certain service areas to Wellpoint (P. Ex. 95). Despite having been assessed as one of the highest ranked MCOs (P. Ex. 198), and winning business under the RFP, Wellpoint—consistent with 10+ years of advocating for improvement of HHSC's procurement process to ensure a fair, transparent, and competitive process and one that

13

complies with the procurement laws and procedures mandated by the legislature—protested the Commissioner's intended contract awards because, just as Wellpoint had argued earlier in its specifications protest, the resulting proposed awards violated Texas law (8 RR 79-84, 92; P. Ex. 44; P. Ex. 160 [036-145]).

HHSC denied the protest (8 RR 80; P. Ex. 160 [029-34]). Wellpoint appealed the protest denial to the Commissioner (P. Ex. 160). Shortly thereafter, and concerned that the Commissioner may act quickly to deny the appeal, execute contracts, and then argue that doing so had insulated her ultra vires acts from legal review, Wellpoint sued the Commissioner for her unlawful behavior and sought declaratory and injunctive relief regarding the pending and future procurements (CR 1819) and later amended its petition (CR 4231-86). Three other MCOs filed lawsuits seeking similar relief (CR 3308-47, 3510-60, 4716-67). The trial court consolidated these lawsuits (CR 2778).

Wellpoint, along with each of the other current MCOs serving STAR or CHIP recipients (some of whom are participants in this proceeding and some of whom are not), are ensuring that the State's STAR and CHIP programs continue to operate without interruption, pending resolution of this matter and completion of a lawful procurement, under bridge contracts, i.e.,

14

extensions of the existing contracts (8 RR 96-97). Following prior failed procurements, the Commissioner has repeatedly "extended" or "bridged" existing contracts in operation, and there is no impediment to her continuing to do that until a lawful STAR and CHIP procurement can be brought to a successful completion (id.; 5 RR 181).

All plaintiffs sought a temporary injunction to bar the Commissioner from proceeding further with the STAR and CHIP procurement and the pending STAR Kids procurement, and from awarding, executing, or implementing any proposed STAR, CHIP, or STAR Kids contracts, before a final judgment issued. The Commissioner filed a plea to the jurisdiction asserting that sovereign immunity protected her actions, which she claimed were not ultra vires, and she asserted that no injunction was proper because the plaintiffs wrongly sought retrospective relief (CR 2949-93).

Both matters were heard together in a four-day evidentiary hearing, where plaintiffs demonstrated that the Commissioner had acted ultra vires in several respects. As detailed in its temporary injunction, the trial court found at least thirteen violations of the law by the Commissioner and that she would continue to violate the law by, for example, failing to develop and implement quality-of-care and cost-efficiency benchmarks—despite the unambiguous statutory requirement to do so under Government Code

§ 536.052(b) [recently recodified]—so that the Commissioner's intended award of new STAR and CHIP contracts would fail to give MCOs that met such benchmarks contract award preference, despite the legislative mandate to do so under Government Code § 536.052(d) [recently recodified] (8 RR 227-28; CR 5877).

Indeed, HHSC staff testified that HHSC has been under a statutory mandate to develop quality-of-care and cost-efficiency benchmarks since 2011, and acknowledged that the legislature had required HHSC develop such benchmarks specifically so they would be used by HHSC in awarding contracts in managed care procurements (8 RR 180-85). In fact, as HHSC staff conceded, the legislature again reminded the agency of the statutory duty to develop these benchmarks via a budget rider in 2021, and yet, despite this longstanding statutory duty mandating the development and use of these benchmarks, HHSC has done neither (8 RR 180-81). In short, HHSC has never used the legislatively-mandated benchmarks to give preference, or for any other purpose, in the STAR and CHIP procurement or in any managed care procurement ever (8 RR 180-85; 5 RR 197; 6 RR 42-44). Worse yet, as HHSC staff unequivocally testified, the agency—to this day—has still not followed through on its commitment to actually finalize and operationalize the statutorily-required benchmarks mandated by the legislature,

despite being fully aware of its active noncompliance with the statutory duty to do so (8 RR 180-85). As such, the failure to develop and implement the statutorily-required benchmarks in any managed care procurement conducted since 2011 has caused, and will continue to cause, Wellpoint harm, while impairing the integrity of the affected procurements—both closed and open alike (e.g., STAR Health, STAR+PLUS, STAR and CHIP, and STAR Kids)—and their resulting awards and proposed awards (CR 5877-79; 8 RR 181; 5 RR 77-78, 255).

The trial court likewise found that the Commissioner's intended award of "mandatory" CHIP contracts violated Texas law, including Government Code § 533.004(a) [recently recodified] and Health and Safety Code §§ 62.055 and 62.155 (8 RR 227-28; CR 5878). In short, as argued in Wellpoint's administrative protests and appeals, Texas law requires that "mandatory" contract awards be made under the Medicaid program to certain MCOs meeting statutorily-defined requirements, but requires that contracts for other programs, such as CHIP—which is not a Medicaid program (5 RR 111; 6 RR 50)—be awarded on a best value basis through competitive procurements (P. Ex. 44; P. Ex. 160). The RFP, however, provided that any MCO who was awarded a STAR contract for a given service area would automatically receive a CHIP contract for the same service area as well—meaning that

CHIP contracts would not be awarded on the basis of best value in a competitive procurement, as Texas law requires, but would instead be automatically given to "mandatory" Medicaid MCOs who did not qualify for such CHIP contracts on the basis of score. As the evidence before the trial court showed, the Commissioner's own HHSC staff recognized the problem and even prepared an addendum to "moot" this fatal flaw as identified in Wellpoint's specifications protest (P. Ex. 46; P. Ex. 266). The Commissioner, nevertheless, chose to move forward with the RFP as published, resulting in intended CHIP contracts that would not be awarded based on competitive procurement, including the proposed award of a CHIP contract in the Dallas service area—a major metropolitan service area with one of Texas's largest populations of CHIP beneficiaries—to the absolute lowest scored MCO (6 RR 49-59; P. Ex. 160 (087-88, 105-07]). As the Commissioner herself admitted, she intended to give a CHIP contract to any bidder that would receive a mandatory Medicaid contract, without regard for how the bidder scored under the RFP (6 RR 157).

In addition, as discussed infra and in the other plaintiffs-appellees' briefing, the trial court found that the Commissioner had violated Texas law, and thus acted ultra vires, in at least eleven other ways (CR 5877-78).

In a single order supported by extensive findings, the trial court denied the Commissioner's plea to the jurisdiction and granted plaintiffs-appellees a temporary injunction based on the Commissioner's thirteen separate ultra vires acts—any one of which the court found to be independently sufficient to support enjoining the Commissioner's present and future violations of law (CR 5875-84). The injunction enjoins her from "awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with" the STAR and CHIP procurement and the pending STAR Kids procurement "or to further the procurement or contracting processes" for them in any regard (CR 5883).

The Commissioner now appeals (CR 5957-60).

## Summary of Argument

This lawsuit is designed to ensure that the Executive Commissioner of the Texas Health and Human Services Commission, the state agency responsible for administering publicly-funded healthcare programs in Texas, does not continue to violate the law or exceed her legal authority when it comes to procuring managed care organizations for these programs.

The Commissioner's actions in the STAR and CHIP procurement—and the pending STAR Kids procurement—are part of a continuing pattern of unlawful behavior that deprives vulnerable populations of meaningful MCO choices by replacing proven, high-performing plans like Wellpoint with underqualified MCOs. Wellpoint participated in the procurement, and though the Commissioner announced an intent to award Wellpoint STAR and CHIP contracts for certain service areas, Wellpoint incurred injury as a result of the Commissioner's unlawful behavior, which the Commissioner has indicated she will continue absent judicial intervention requiring her to comply with the law going forward.

Wellpoint filed this lawsuit seeking prospective injunctive and declaratory relief to compel the Commissioner's future compliance with the law, and sought a temporary injunction to prevent the Commissioner from proceeding further with the STAR and CHIP procurement and the pending

20

STAR Kids procurement upon final disposition of the merits. The Commissioner filed a plea to the jurisdiction. The trial court denied the plea and issued a temporary injunction, prompting this appeal.

The trial court correctly denied the plea to the jurisdiction because Wellpoint has pleaded viable claims that the Commissioner has acted and continues to act ultra vires. To begin with, the court properly concluded that the claims were ripe. The parties have a present controversy: Wellpoint contends there were ultra vires acts, the Commissioner disagrees and actively seeks to proceed with the illegal procurement. And Wellpoint is threatened with imminent injury: at minimum, it is at risk of losing employees, income, and its network of healthcare providers. Its claims to remedy that injury with prospective relief are ripe.

Wellpoint's claims are ultra vires claims—i.e., that the Commissioner has acted and continues to act beyond the powers the legislature granted while also failing to comply with law—and thus, Wellpoint had no duty to exhaust administrative remedies because there's no such thing for ultra vires acts. A state agency is not the judge of whether it has acted without legal authority or failed to follow the law.

The trial court also properly issued a temporary injunction. The record contains evidence of the Commissioner's ultra vires acts violating Texas

statutes, including the Government Code and Health and Safety Code provisions, constitutional provisions, and administrative rules, including, for example, the following: (i) wrongly applying standards applicable to the regulatory scheme for mandatory Medicaid contracts in awarding non-Medicaid CHIP contracts, (ii) failing to develop the quality-of-care and cost-efficiency benchmarks the legislature statutorily-required be developed over a decade ago for use in managed care procurements, including the STAR and CHIP procurement and the pending STAR Kids procurement, (iii) failing to give preference to MCOs in awarding managed care contracts based on those benchmarks, and (iv) failing to afford a meaningful protest process for resolving procurement-related issues.

There was some evidence of each of these ultra vires acts, so the injunction's findings of likelihood of success have support in the record—and as a result—there being at least some record evidence of at least one ultra vires act—the court properly denied the Commissioner's plea to the jurisdiction. Moreover, the equities did not favor the Commissioner: she had extended the current STAR and CHIP contracts to manage these healthcare programs—including the ones Wellpoint was, and still is, operating under—and thus could not show that an injunction delaying the present STAR and CHIP

procurement and the official awarding of the proposed contracts would harm Texas program beneficiaries through interrupted or inadequate healthcare.

The injunction was in proper form, too, in compliance with Rule 683. It states reasons for its issuance, specified the legal authorities violated, explained the acts enjoined, and made findings of irreparable injury. With an ultra vires claim alleging failure to comply with a mandatory duty, such as a duty statutorily imposed by the legislature—specifying the legal authority imposing the duty, and stating the failure, is about all one can say.

Finally, there's no merit to the Commissioner's complaint that she was treated unfairly when the trial court excluded certain exhibits at the hearing. The Commissioner has not shown that the documents were pertinent to each of the ultra vires violations the trial court found—which is to say that excluding the exhibits, even if it were an abuse of discretion, could only be harmless error. Nor did the Commissioner proffer any witness with personal knowledge of them at the hearing, or produce a representative prepared to testify about them during depositions. Under these circumstances, exclusion of the exhibits was proper, and in any event harmless.

# Argument

## I. THE TRIAL COURT HAS SUBJECT MATTER JURISDICTION.

### A. Wellpoint's claims are ripe.

This Court reviews the trial court's disposition of the Commissioner's plea to the jurisdiction de novo, considering the pleadings, factual assertions, and all relevant evidence in the record. *City of Hous. v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). "Looking at the plaintiff's intent, pleadings are construed liberally in favor of the plaintiff to determine whether the facts alleged affirmatively demonstrate the court's jurisdiction to hear the matter." *Id.*

In challenging the trial court's subject matter jurisdiction, the Commissioner contends that Wellpoint's claims are not ripe. As the Commissioner explains, a claim is ripe if "an injury has occurred or is likely to occur." Brief for Appellant 12 (quoting *Point Energy Partners Permian LLC v. MRC Permian Co.*, 669 S.W.3d 796, 812 (Tex. 2023)). The Commissioner nowhere challenges the specific findings in the temporary injunction order that an injury has occurred to Wellpoint and other injuries are likely to occur. The injunction makes these findings, among others, as to Wellpoint:

> Wellpoint has already suffered and will continue to suffer the poaching of its highly trained employees by other MCOs. . . . Wellpoint must continue to provide uninterrupted healthcare to

its members, and its ability to do so will be substantially jeopardized if there are key staff vacancies.

Wellpoint has already suffered and will continue to suffer difficulty retaining its existing, robust provider network in the impacted service areas. . . .

In addition, the harm to Wellpoint is imminent as Defendant does not intend to correct her unlawful course of action for future procurements or the ongoing STAR Kids RFP.

(CR 5881). The Commissioner asserts an inadequate, multifarious, general challenge to all of the "irreparable harm" findings, vaguely claiming: "there is no evidence that Plaintiffs have suffered harm." Brief for Appellant 46. But the thrust of that argument is not that the findings lack evidentiary support, but rather that they are immaterial. According to the Commissioner, the MCOs had to show that "but for the alleged deficiencies in the procurement, they would be exposed to an adverse outcome they would not otherwise face." *Id*. There's "no evidence" to support such findings, the Commissioner argues, so there's no basis for any "irreparable injury" finding.

That's too narrow a view of the matter: it's a merits argument that there's no causation. It's not a "no injury" argument as the Commissioner attempts to recast it. As the Supreme Court of Texas has explained, "a plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority. . . ." *See Coastal Liquids Transp. LP v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001) (quoting *Nootsie, Ltd.*

25

*v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). A plaintiff does not lack standing simply because another legal principle may prevent it from prevailing on the merits. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008). The inquiry "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011).

A claim is ripe if it involves a real controversy, not a hypothetical set of facts. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001). The Commissioner announced her intent to award contracts based on MCO proposals received (P. Ex. 95). That is not hypothetical. Although the procurement process and contract execution is stayed by the parties' Rule 6.6 agreement, with the protest appeals still pending, the Commissioner argues that she did not act ultra vires—so ipso facto the pending protest appeals have no merit (CR 4201-10). She argues that "these plaintiffs have not met their burden on proving ultra vires actions" (8 RR 215-23). That's a real, i.e., not hypothetical, controversy, and one the Commissioner has confirmed in her principal brief, where she disputes that she abused her discretion or engaged in ultra vires acts under the various statutes at issue. Brief for Appellant 17-38.

Moreover, Wellpoint has incurred injury resulting from at least the following: (a) the Commissioner's unauthorized application, in the

procurement of CHIP services, of the statutory scheme for awarding manda-tory STAR/Medicaid contracts, (b) the failure to develop statutorily-required quality-of-care and cost-efficiency benchmarks, (c) the failure to give con-tract award preference for meeting quality-of-care and cost-efficiency bench-marks, and (d) the failure to afford a meaningful protest process.

Recognizing the fundamental flaw in the RFP's specifications from the unauthorized application to CHIP contracts of the STAR regulatory scheme for awarding mandatory Medicaid contracts (even though that scheme does not apply to a non-Medicaid program like CHIP), Wellpoint's specifications protest challenged upfront the *de facto* mandatory contract award require-ment on CHIP contracts, which illegally ignored CHIP-specific laws, rules, and program requirements (P. Ex. 44). The Commissioner nevertheless re-fused to take any corrective action whatsoever, forcing Wellpoint to expend substantial time and resources in the process.

Wellpoint further suffered injury from the Commissioner's failure to comport her actions with statutes limiting her discretion. By ignoring the legislative mandate to develop the quality-of-care and cost-efficiency bench-marks, the Commissioner's actions denied Wellpoint contract award prefer-ence statutorily guaranteed under Government Code § 543A.0052(d) (recod-ifying § 536.052(d)) to an MCO that offers a managed care plan that meets

the benchmarks (8 RR 82-83, 180-81, 184-85). Wellpoint most assuredly would have met the qualifications, given it was one of the highest-ranking MCOs evaluated in the procurement, scoring substantially higher than the majority of the MCOs, especially, the hospital-district MCOs to which the Commissioner proposes to award unauthorized mandatory CHIP contracts. The salient point, however, is that Wellpoint was denied the opportunity to meet the benchmarks, and thus, obtain the preference, despite the legislature's mandate to the Commissioner to develop the benchmarks and give preference to MCOs in awarding managed care contracts like the STAR and CHIP contracts at issue based on those benchmarks. In addition, the Commissioner's failure to provide Wellpoint with relevant information about the STAR and CHIP procurement prior to the protest deadline prevented Wellpoint from using such information in documenting its protest of the intended contract awards—Wellpoint "could not get the documentation needed to support [its] case"—injury confirmed by Wellpoint's inability to obtain documents before the protest deadline through a timely request under the Public Information Act ("PIA"), Tex. Gov't Code §§ 552.001 *et seq.*, and by the Commissioner's refusal to consider any protest supplements as untimely (5 RR 153-54; 8 RR 90-91; P. Ex. 159 [n.1]). Given these facts and the evidence in the record, Wellpoint's claims are ripe.

**B. Texas courts have not made exhausting administrative remedies a condition precedent to filing ultra vires claims.**

There is no exhaustion of remedies requirement applicable here. Texas law does not require a claimant to exhaust administrative remedies before filing ultra vires claims. *See, e.g.*, *Kilgore ISD v. Axberg*, 535 S.W.3d 21, 34 (Tex. App.—Texarkana 2017, no pet.) (exception exists "when an administrative agency purports to act outside its statutory powers"); *Brennan v. City of Willow Park*, 376 S.W.3d 910, 921-22 (Tex. App.—Fort Worth 2012, pet. denied) (parties need not pursue a protest if alleging agency acted ultra vires); *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006). This is especially true with regard to Wellpoint's ultra vires challenge to the constitutionally-infirm protest process. *Cf. Axon Enters Inc. v. FTC*, 598 U.S. 175, 191-96 (2023) (holding plaintiff is injured if it has to assert first, before agency, argument that the agency's decision-making process is constitutionally defective).

The Commissioner cites no contrary case in arguing that Wellpoint had to pursue (or complete) a protest of the intended contract awards before filing this suit. Brief for Appellant 14-16. For example, the plaintiff in *Riner v. City of Hunters Creek*, 403 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2013, no pet.), challenged agency action but didn't plead it was ultra vires: "The gravamen of the Riners' complaint is that the Commission

misconstrued an ordinance concerning lot size by failing to include the area under the Riners' proposed public-street easement when calculating the size of the three lots that would be created by their proposed subdivision." *Id.* at 922-23. That's an allegation of mere error.

Because the Commissioner surely does not mean to argue that she has exclusive jurisdiction to decide whether she's acting ultra vires, this argument is just another disguised merits argument, to-wit: Wellpoint has no valid ultra vires claim to begin with because its claims are really disputes that the Commissioner "has incorrectly applied the law governing the subject of its dispute." Brief for Appellant 15. Here, Wellpoint plainly contends that the Commissioner acted beyond her powers. Whether the Commissioner did so because she bristled at the legislative mandates imposed on her doesn't matter. Her actions were ultra vires regardless, and Wellpoint did not need permission from her or the legislature to sue the Commissioner for such actions. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority."); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.").

To be sure, in its protests filed with the Commissioner, Wellpoint has raised many ultra vires issues that Wellpoint pleads in its petition. That's no concession that she has exclusive jurisdiction over those matters; it's just a concession that she has power to correct course and start acting within the bounds of her legal authority if she so chooses, and self-correction is far more efficient for all involved than litigation.

Moreover, even if there were any such exhaustion of remedies requirement, Wellpoint satisfied it because Wellpoint filed suit after the Commissioner unequivocally rejected Wellpoint's attempts to get the Commissioner to follow the law. After the STAR and CHIP RFP was issued on December 7, 2022, Wellpoint recognized that the RFP's specifications violated the law because they sought to apply the STAR regulatory scheme for awarding mandatory Medicaid contracts to CHIP contracts even though that scheme does not apply to non-Medicaid programs like CHIP; Wellpoint thus filed a specifications protest to the solicitation's terms on February 14, 2023 (8 RR 70-72; P. Ex. 44). Unable to wait on a decision on its specifications protest before the RFP's proposal submission deadline came due, Wellpoint timely submitted its proposal on March 3, 2023 (P. Ex. 38; P. Ex. 236). HHSC's Deputy Executive Commissioner denied Wellpoint's specifications protest as premature, eleven days later, without considering the merits of Wellpoint's

arguments, claiming instead that "the resulting adverse impact to [Wellpoint] . . . would only be speculative" (P. Ex. 160 [087-88]; 5 RR 111-19); and the Commissioner subsequently denied Wellpoint's appeal on June 2, 2023, stating that she would not "separat[e] STAR & CHIP (based on a speculative injury that may not occur)" and that her decision was "HHSC's final administrative action regarding" Wellpoint's specifications protest (P. Ex. 160 [105-07]; 8 RR 70-79).

Wellpoint thus cannot reasonably be faulted for filing suit before the Commissioner (again) denies protest appeals raising the same issues—especially given she denied Wellpoint any meaningful opportunity to provide new evidence or use information about the procurement gained through PIA requests (8 RR 70, 79-80, 104-05; 5 RR 152-54; P. Ex. 160). She could otherwise undermine any chance for a judicial remedy addressing her ongoing ultra vires acts—a tactic she (or her predecessors) tried to use in earlier managed care procurements. *See Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 848 (Tex. App.—Austin 2020, pet. denied) (noting Commissioner's argument that claims seeking to bar her from awarding contracts "had become moot because the commissioner had . . . executed and officially awarded the contracts").

The Commissioner also asserts that Wellpoint waived its ultra vires claims because it submitted a bid and thereby "acceded to the terms of the solicitation." Brief for Appellant 15-16. But waiver requires relinquishment of a *known* right. *See, e.g.*, *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (emphasis added). Before a notice of intent to award issued, and given the Commissioner's position that she has almost unlimited discretion in a procurement, Wellpoint could not possibly have known for certain that the Commissioner would act ultra vires in every respect the trial court found. For example, only after the announced intent to award contracts (and the subsequent testimony HHSC staff gave to the Legislature on June 4, 2024) could Wellpoint have known that the Commissioner does not use quality rubrics and measurements, or past performance of MCOs generally, in this current procurement (8 RR 98-104; P. Ex. 148). Nor could Wellpoint have known that, despite working with existing MCOs on quality initiatives and performance metrics, the Commissioner does not account for an MCO's success in implementing quality initiatives or an MCO's performance metrics in this procurement (id.). There was no forewarning about such acts. Wellpoint acted promptly in filing this lawsuit and did nothing inconsistent with pursuing its ultra vires claims here.

The Commissioner's exhaustion argument also defeats her waiver argument. Wellpoint submitted its proposal subject to its pending specifications protest, and did not withdraw it (8 RR 70-72; P. Ex. 44; P. Ex. 38; P. Ex. 236). After HHSC's Deputy Executive Commissioner denied the specifications protest, Wellpoint appealed the denial to the Commissioner, while its RFP proposal was still under consideration, even noting in its appeal that the failure to correct the RFP's flaws prior to going through the procurement process would invariably lead to protests on the same basis thereafter (5 RR 111-19; 8 RR 70-79; P. Ex. 160 [089-104]).

Moreover, the Commissioner's waiver argument is little more than a Potemkin village meant to hide the duplicity of her argument. She and her staff perfunctorily dismissed Wellpoint's challenges to the solicitation's terms but at no point informed Wellpoint that any issue raised in its specifications protest or appeal (or any challenge to the Commissioner's ultra vires acts for that matter) was waived because of its participation in the procurement. Furthermore, the Commissioner explained that, under her rules, to prevail in a protest, a protestant must describe the "resulting adverse impact to the protestant"—1 Tex. Admin. Code § 391.305(c)(3)—and because she had not awarded contracts yet, "a speculative injury that may not occur" to Wellpoint was not enough (P. Ex. 160 [105-07]). So the protest (and appeal)

34

she now says Wellpoint should have brought before participating in the procurement would have been—and in fact was—denied as premature (5 RR 111-19; 8 RR 70-79; (P. Ex. 160 [087-88, 105-07]):

> Q. And you denied [Wellpoint's specifications protest (P. Ex. 44)] effectively as premature because it was before the contracts had been awarded; is that right?
>
> A. Because there was no adverse effect shown in the – in the protest, which is a requirement under the Administrative Code.
>
> Q. And if I understand correctly, you felt there wasn't an adverse effect because they didn't know if they were going to win or lose yet; correct?
>
> A. Correct.

(5 RR 113). That's gamesmanship. Under the Commissioner's version of her own rules: *heads*, she wins; *tails*, Wellpoint loses. Because her own rules precluded a viable specifications protest, she has waived arguments—and forfeited any credibility when arguing—that Wellpoint had to assert, in an administrative protest, the challenges she denied as premature when Wellpoint raised them in its specifications protest.

## II.  THE TRIAL COURT PROPERLY ENJOINED THE COMMISSIONER.

This Court reviews an order granting a temporary injunction for an abuse of discretion. *See Tex. Educ. Agency v. Houston ISD*, 660 S.W.3d 108, 116 (Tex. 2023). Under this standard, this Court will defer to the trial court's findings if evidence supports them but reviews legal determinations de novo.

*Haedge v. Cent. Tex. Cattlemen's Ass'n*, 603 S.W.3d 824, 827 (Tex. 2020). So if some evidence reasonably supports the trial court's decision, then even if the evidence is conflicting the trial court did not abuse its discretion. *See, e.g., Henry v. Cox*, 520 S.W.3d 28, 33-34 (Tex. 2017).

As a threshold matter, this Court should affirm the temporary injunction on the ground that it was a proper exercise of the trial court's power to enforce its jurisdiction over the subject matter of the lawsuit. District courts "have the power to issue writs necessary to enforce their jurisdiction." Tex. Const. art. V, § 8. "A judge of a district court may . . . grant writs of . . . injunction . . . and all other writs necessary to the enforcement of the court's jurisdiction." Tex. Gov't Code § 24.011. Assuming the trial court had jurisdiction of this suit, it could issue an injunction to protect that jurisdiction. *Winfrey v. Chandler*, 318 S.W.2d 59, 61 (Tex. 1958).

In the trial court, the plaintiffs-appellees emphasized the urgent need for an order promptly after the conclusion of the hearing (Supp. RR 31-35), arguing in particular that injunctive relief was needed to enforce the trial court's jurisdiction over the subject matter of their claims—specifically, to keep the Commissioner from executing contracts and potentially mooting the claims:

> Following a similar past procurement for another Medicaid program, Defendant's predecessor quickly and summarily executed

allegedly unlawful contracts and then argued that any challenge to their procurement was moot. *See Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 848 (Tex. App.—Austin 2020, pet. denied). Plaintiffs seek immediate relief from this Court to forestall similar gamesmanship, avoid considerable harm to themselves and their communities, and ensure that the State's largest and most important procurements are conducted consistent with Texas law.

(CR 3126).

The trial court found that the Commissioner "will act ultra vires in awarding, executing, and implementing the contracts arising out of" the RFP (CR 5876). The Commissioner challenged that the acts were ultra vires; she did not challenge the finding that she would indeed take action to execute and implement the proposed contracts she had announced an intent to award. Brief for Appellant 17-38. This case is like *Wilson v. Community Health Choice Texas*, where "the commissioner filed a 'supplemental plea to the jurisdiction' asserting that Community Health's claims, which sought to prevent the commissioner from awarding the contracts in violation of section 533.004, had become moot because the commissioner had . . . executed and officially awarded the contracts." 607 S.W.3d at 848. If the Commissioner were to do the same here, that could potentially render the prospective relief Wellpoint currently seeks improperly retrospective—namely, an order enjoining the Commissioner from engaging in further ultra vires acts—thereby eliminating a substantial part of the controversy between the parties. *See*

37

*Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 ("If the relief is injunctive, then whether it is retrospective or prospective is measured from the date of injunction." (citation omitted)).

The trial court's unchallenged finding that the Commissioner will do the same in the present case as the Commissioner attempted to do in *Wilson* supports the injunction as one necessary to enforce the trial court's jurisdiction.

This Court may affirm a judgment on grounds raised in the trial court but not addressed by that court. *See City of Austin v. Whittington*, 384 S.W.3d 766, 789 (Tex. 2012). The Commissioner premised her argument on the standard for an injunction to prevent harm to the parties by maintaining the status quo. Brief for Appellant 16 The injunction is properly upheld in that regard; as discussed infra, it satisfied the standards for such an injunction. But the injunction is properly upheld on this alternate basis (as one enforcing the trial court's jurisdiction) as well, so this Court should also affirm it on that basis.

## A.   Wellpoint will likely prevail on its ultra vires claims.

*i.   Evidence supports findings that the Commissioner exceeded her powers by acting without legal authority.*

Government officials acting in their official capacity enjoy the same immunity as the governmental unit unless the official has engaged in ultra vires

conduct. *See, e.g.*, *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009). If an official acts outside the law, that official is not acting on behalf of the state and the state's immunity does not extend to such acts. *Phillips v. McNeill*, 635 S.W.3d 620, 628 (Tex. 2021); *see also Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 ("Even if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official engages in *ultra vires* conduct." (citation omitted)).

In general, ultra vires action is either: (1) an act without legal authority, i.e., where an official exceeds the bounds of her granted authority or if her act conflicts with the law itself, or (2) a failure to perform a purely ministerial act. *See Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022); *Wilson*, 607 S.W.3d at 851. Such "ministerial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "Conversely, 'discretionary acts' are those that 'require the exercise of judgment and personal deliberation.'" *Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 576.

Use of the word "shall" in a statute "'evidences the mandatory nature of the duty imposed.'" *Id.* (quoting *Sw. Bell Telephone, L.P. v. Emmett*, 459

S.W.3d 578, 588 (Tex. 2015)). Accordingly, a statute providing that a government official "shall" perform an act "imposes a duty" on that official to perform that act. *See* Tex. Gov't Code § 311.016; *see also* ACT, *Black's Law Dictionary* (12th ed. 2024) ("If the act is mandatory, it is also termed ministerial duty."). It doesn't matter if discretion exists in performance of the duty—as with trial court discretion in drafting a judgment the court has a ministerial duty to sign. Wellpoint complains about the complete failure to execute, not the discretion allowed within that execution. *See, e.g., Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 582 ("The controversy here is not about how the City must make the payments, only whether it must. The statute leaves no room for the City to exercise judgment regarding whether the payments must be made." (citations omitted)).

As discussed above, the Commissioner acted without legal authority by applying an unauthorized mandatory award requirement to CHIP contracts based on the STAR regulatory scheme for awarding mandatory Medicaid contracts. The RFP specifications allowed HHSC to evaluate, score, and select MCOs for a contract award for both STAR and CHIP services by considering *only* STAR-specific laws, rules, and program requirements and without regard for CHIP-specific laws, rules, and program requirements— which are separate and distinct from STAR's. Wellpoint's specifications protest alerted

40

the Commissioner early on that awarding CHIP contracts under the STAR regulatory scheme for awarding mandatory Medicaid contracts pursuant to Government Code § 533.004 (recodified as § 540.0206) would be an ultra vires act because the statute did not authorize the Commissioner to award mandatory contracts for non-Medicaid programs like CHIP (P. Ex. 44).

Despite having the obligation to review Wellpoint's specifications protest, and the opportunity and wherewithal to prepare an addendum that the Commissioner's own HHSC staff acknowledged would resolve the fatal flaw in the solicitation's terms Wellpoint had identified, the Commissioner declined to implement any correction whatsoever (P. Ex. 46; P. Ex. 266; 5 RR 114-17). The Commissioner instead chose to trudge forward, ignoring the limitations on her discretion in awarding CHIP contracts and Wellpoint's protestations that doing so would result in an unlawful procurement and contract awards injuring Wellpoint and Texas citizens and taxpayers.

As Wellpoint had feared (and warned would occur in its specifications protest), the result of the Commissioner's unauthorized application of the regulatory scheme for awarding mandatory Medicaid contracts under Government Code § 533.004 (recodified as § 540.0206) to CHIP services was proposed CHIP contract awards that were not based on best value as required by Government Code § 2155.144. The consequences of the

Commissioner's failure to adhere to Government Code § 2155.144 and misapplication of § 533.004 (recodified as § 540.0206)—such as the proposed award of a mandatory CHIP contract in the Dallas service area, which has one of Texas's largest populations of CHIP beneficiaries, to the lowest ranked MCO, i.e., the organization evaluated as offering the *least* value to HHSC—are especially egregious given the Commissioner's intended contract awards would permit low-scoring and underqualified MCOs to serve one of Texas's most vulnerable citizen populations—low-income children who cannot qualify for Medicaid or otherwise afford health insurance.

The Commissioner argues – incorrectly – that despite the lack of value these MCOs bring to HHSC, her authority under Health and Safety Code § 62.053(3) to "coordinate" CHIP, a non-Medicaid program, with the Medicaid program (i.e., STAR) permitted this action. Brief for Appellant 38. "Coordinating," however, does not mean changing—or eliminating—the substantive statutory requirements of CHIP. *See Cities of Corpus Christi v. Public Utility Comm'n of Tex.*, 188 S.W.3d 681, 689-90 (Tex. App.—Austin 2005, pet. denied) ("[E]ven if the legislature intends that an agency created to centralize expertise in a certain regulatory area 'be given a large degree of latitude in the methods it uses to accomplish its regulatory function,' an agency may not, in the guise of implied powers, exercise what is effectively a new

42

power, or a power contrary to a statute, on the theory that such exercise is expedient for the agency's purpose, nor may it contravene specific statutory language, run counter to the general objectives of the statute, or impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." (citations omitted)).

Regardless, there was evidence demonstrating that, by bundling STAR and CHIP into a single procurement that conducts evaluations and determines contract awards in a manner that results in awarding a mandatory CHIP contract, regardless of an MCO's relative ranking in the evaluations, the Commissioner did not administer a competitive procurement process for CHIP contracts on the basis of best value as required by the governing law, including Health and Safety Code §§ 62.055 and 62.155. Under these circumstances, finding Wellpoint asserted valid ultra vires claims and granting the temporary injunction was not an abuse of discretion.

ii. *Evidence supports findings that the Commissioner exceeded her powers by ignoring statutes requiring specified actions.*

Wellpoint has valid ultra vires claims if the governing law required that the Commissioner "shall" do something and she ignored that mandate. *See, e.g., Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 582 ("Article 6243h states that the City 'shall provide full and timely information' to the Pension System and 'shall make contributions' to the Pension System. . . . The statute

43

leaves no room for the City to exercise judgment regarding whether the payments must be made. Accordingly we hold that article 6243h creates mandatory duties and defines them with sufficient clarity to support the Pension System's *ultra vires* and mandamus claims." (internal citations omitted)); *Emmett*, 459 S.W.3d at 588 (observing that the "use of the word 'shall' evidences the mandatory nature of the duty imposed" by the statute).

This occurred in at least three regards: (a) failing to develop statutorily-required quality-of-care and cost-efficiency benchmarks, (b) failing to give contract award preference for meeting the statutorily-required benchmarks, and (c) failing to afford a meaningful protest process. Because there was some evidence of each failure, the trial court did not abuse its discretion in finding that Wellpoint asserted valid ultra vires claims. *See, e.g.*, *State ex rel. Office of Att'y Gen. of Tex. v. City of San Marcos*, 714 S.W.3d 224, 239-41 (Tex. App. [15th Dist.] 2025, pet. denied) (holding that fact issues precluded dismissal of claims that city council, mayor, and police chief acted ultra vires in violating Texas Local Government Code § 370.003).

1. <u>Evidence shows the Commissioner failed to develop quality-of-care and cost-efficiency benchmarks.</u>

Since 2011, Government Code § 536.052 (recodified as § 543A.0052), has required the Commissioner to develop quality-of-care and cost-efficiency benchmarks. The recodified statute states: "The commission *shall* develop

quality-of-care and cost-efficiency benchmarks, including benchmarks based on a managed care organization's performance with respect to: (1) reducing potentially preventable events; and (2) containing the growth rate of health care costs." *Id.* § 543A.0052(b) (recodifying § 536.052(b) and incorporating non-substantive revisions) (emphasis added). The Commissioner has no discretion to refuse to develop the benchmarks; by using the word "shall" the statute imposed a mandatory duty, and leaves no room for the Commissioner to exercise judgment regarding whether to develop the benchmarks. *Id.* § 311.016(2) ("'Shall' imposes a duty."); *see also Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 582; *Emmett*, 459 S.W.3d at 588. Developing those benchmarks was, and still is, a ministerial act she must perform. None of this is in dispute. Brief for Appellant 28.

Despite the Commissioner's attempts to downplay her violation of this statute as if it were a mere matter of timing, it is anything but. The Commissioner has failed to comply with her statutory duty for over a decade. Worse yet, as part of the 2021 General Appropriations Act, S.B. No. 1, 87th Leg., ch. 1053, R.S. (2021), the legislature, through enactment of "Rider 20," made HHSC's appropriations for fiscal year 2023 contingent on HHSC developing the required benchmarks by September 1, 2022 (P. Ex. 34). Despite taking the appropriated funds, HHSC's compliance with the statute remained

45

nonexistent. As the Commissioner's HHSC staff conceded, the agency has not done, and is not currently doing, anything to develop these benchmarks for use in any managed care procurement (8 RR 178-85; 5 RR 197; 6 RR 42-44).

An official or agency acts ultra vires if it "failed to perform a ministerial duty." *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021). Breach of the duty here—failure to develop the benchmarks—is ultra vires, as the trial court found in denying the Commissioner's plea and granting the injunction.

2. <u>Evidence shows the Commissioner failed to give contract award preference for meeting quality-of-care and cost-efficiency benchmarks.</u>

The Commissioner does not seriously dispute that she has ignored her statutory duty to develop quality-of-care and cost-efficiency benchmarks. Instead, the Commissioner argues – incorrectly – that breach of this duty doesn't matter because in awarding contracts to MCOs the statute affords the Commissioner two choices: either (i) give preference to an MCO that offers a managed care plan implementing quality initiatives as determined by HHSC, or (ii) give preference to an MCO that offers a managed care plan that meets the quality-of-care and cost-efficiency benchmarks as developed by HHSC. Brief for Appellant 28. As the Commissioner explains it, she could choose to forego the benchmark route entirely and go the "quality initiatives" route.

46

The statute reads otherwise. The statute gives the choice to the MCO, not HHSC. Specifically, the statute provides:

> In awarding contracts to managed care organizations under the child health plan program and Medicaid, the commission *shall*, in addition to considerations under Section 533.003 [recodified in relevant part, as § 540.0204] of this code and Section 62.155, Health and Safety Code, give preference to an organization that offers a managed care plan that successfully implements quality initiatives under Subsection (a) as determined by the commission based on data or other evidence provided by the organization or meets quality of care and cost-efficiency benchmarks under Subsection (b).

Tex. Gov't Code § 536.052(d) (recodified as § 543A.0052(d)) (emphasis added); *see also id.* § 543A.0001(11) ("'Managed care organization' means a person that is authorized or otherwise permitted by law to arrange for or provide a managed care plan. The term includes a health maintenance organization and an exclusive provider organization."); *id.* § 543A.0001(12) ("'Managed care plan' means a plan, including an exclusive provider benefit plan, under which a person undertakes to provide, arrange or pay for, or reimburse any part of the cost of health care services. The plan must include arranging for or providing health care services as distinguished from indemnification against the cost of those services on a prepaid basis through insurance or otherwise. The term does not include a plan that indemnifies a person for the cost of health care services through insurance.").

47

For the Commissioner's part, the statute again uses "shall," imposing a mandatory duty on her to give preference to a qualifying MCO regardless of which eligible route the MCO takes to offer a qualifying managed care plan. *Id.* § 311.016(2) ("'Shall' imposes a duty."); *see also Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 582; *Emmett*, 459 S.W.3d at 588. Indeed, the statute, recently amended to incorporate non-substantive changes, makes this reading even more clear:

> In awarding contracts to managed care organizations under the child health plan program and Medicaid, the commission *shall* . . . give preference to an organization that offers a managed care plan that: (1) successfully implements quality initiatives under Subsection (a) as the commission determines based on data or other evidence the organization provides; or (2) meets quality-of-care and cost-efficiency benchmarks under Subsection (b).

Tex. Gov't Code § 543A.0052(d) (recodifying § 536.052(d)) (emphasis added).

If the choice were subject to the Commissioner's discretion, as she contends, the legislative purpose behind half of the statute would be controlled by the whims of the Commissioner who, to this day, continues to violate the legislature's mandate that she develop quality-of-care and cost-efficiency benchmarks—a mandate that even the Commissioner's own HHSC staff admits was imposed so that the benchmarks could be used in procurements (8 RR 180). By declining to develop benchmarks, the Commissioner

48

disregarded the legislature's statutory mandate to give contract award preference to MCOs offering managed care plans meeting the benchmarks. But even if she were to finally develop those benchmarks, if she could choose to deny preference to MCOs that meet those benchmarks—giving preference only to those that implement quality initiatives—the statutory language affording contract award preference for MCOs that meet those benchmarks would be wholly ineffective.

The Commissioner undisputedly gave no preference on the basis of quality-of-care and cost-efficiency benchmarks in awarding contracts to MCOs under CHIP and Medicaid (5 RR 197). The Commissioner's own HHSC staff testified unequivocally that, even after over a decade, the Commissioner has neither developed the benchmarks nor given preference to an MCO that offers a managed care plan that meets the benchmarks despite being statutorily duty-bound to do so (8 RR 178-85; 6 RR 42-44; 5 RR 197). The Commissioner's failure to award contracts to Wellpoint and other MCOs that offer managed care plans that meet the benchmarks that the Commissioner declined to develop is ultra vires. The Commissioner's unmitigated failure to comply with her statutory duty is not reasonably subject to debate. The trial court finding that the Commissioner acted ultra vires in doing so and granting the temporary injunction did not abuse its discretion.

3. Evidence shows the Commissioner failed to afford a meaningful protest process.

In the same dismissive manner with which she regards her failure to develop statutorily-required quality-of-care and cost-efficiency benchmarks, the Commissioner gives short shrift to her failure to afford a meaningful protest process. Instead, the Commissioner largely quibbles over citations and terminology before arguing – incorrectly – that the record doesn't show how the lack of information prejudiced Wellpoint in the protest process.

As a preliminary matter, the legislature has long imposed a statutory duty on public officials and employees of the State to promptly produce to the public, on request, government information, such as contracting information HHSC maintains regarding its managed care procurements. Tex. Gov't Code §§ 552.002-.003, 552.021, 552.022, 552.0222, 552.221. This statutory duty reflects "the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." *Id.* § 552.001(a). The duty to promptly produce means to "produce public information for inspection, duplication, or both on application by any person to the officer . . . as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* § 552.221(a). Against this backdrop, the PIA expressly "provides that 'a requestor may file suit for

50

a writ of mandamus compelling a governmental body to make information available,' thus clearly waiving immunity from these particular suits." *Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d at 583 (quoting Tex. Gov't Code § 552.321(a)).

The day after the Commissioner issued the notice of intent to award new STAR and CHIP contracts, Wellpoint sought information regarding the decision-making process HHSC followed after receiving proposals from MCOs by submitting a PIA request for documents and other information routinely created and maintained as part of HHSC's procurement file (8 RR 79; P. Ex. 160 [108-10]). The salient point here is that, by the time Wellpoint had to file its protest of the intended contract awards to meet the deadline imposed in the HHSC protest procedures, Wellpoint had received none of the requested PIA information to which it was statutorily entitled. At minimum, Wellpoint should have promptly, if not immediately, received the other MCOs' redacted proposals. Instead, the redacted proposals were withheld from Wellpoint, despite HHSC staff having released to the redacted proposals, including Wellpoint's, to third parties—months earlier and while the procurement was actively underway—thereby improperly disclosing at a critical time during the evaluation and scoring process Wellpoint's entire

51

strategy for key parts of its proposal, such as how it oversees and contracts with material subcontractors (8 RR 88-90; P. Ex. 236 [625-26]).

The tension between these conflicting actions is palpable. The PIA requires that an agency "treat all requests for information uniformly." Tex. Gov't Code § 552.223. Rather than attempt to reconcile the unequal treatment, the Commissioner opts for ignoring the failure to produce PIA information to Wellpoint, while rewriting the narrative around her affirmative act of producing PIA information to others. To summarize the staggering chutzpah involved here: the Commissioner argues that she produced the redacted proposals to third parties, even though the evaluation and scoring were actively underway, because of "the mandate to provide information to any person requesting the bids under the PIA." Brief for Appellant 34. She even notes that there is no "requirement that HHSC refuse to provide public information when HHSC receives a valid PIA request." *Id.* 32. The mental gymnastics don't end there. Without contesting the validity of Wellpoint's PIA request or the continuing duty to comply with the statutory mandate to produce PIA information, the Commissioner attacks the record as failing to show how the lack of information could have prejudiced Wellpoint in the protest process, which she seemingly disputes Wellpoint has any right to in the first place because there is no property or liberty interest in being

52

awarded a government contract. Brief for Appellant 34-35. Finally, the Commissioner resuscitates her exhaustion argument, claiming the "litigation conduct resulting in the improper injunction foreclosed any meaningful agency appeal process." *Id*. 35.

The court can make quick work of these strawman arguments. A two-part test governs a due course of law (or due process) claim under Section 19 of Article 1 of the Texas Constitution. *Mosley v. Tex. Health and Human Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019). That clause provides that"[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. Accordingly, the court must determine (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and if so, (2) what process is due. *Mosley*, 593 S.W.3d at 264. "'Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id*. (quoting *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995)). "'[T]he remedy for a denial of due process is due process[.]'" *Id*. at 268 (quoting *Than*, 901 S.W.2d at 933).

Wellpoint undoubtedly has a right to a meaningful protest process; the Texas statutes themselves require such a process to exist. HHSC

promulgated protest procedures, the purpose of which was to resolve "protests relating to purchases, as required by Texas Government Code § 2155.076." 1 Tex. Admin. Code § 391.301; *see also id.* §§ 391.101, 391.103(a), 391.107. Pursuant to Government Code § 2155.076, the legislature mandated "each state agency"—including HHSC—"by rule shall develop and adopt protest procedures for resolving vendor protests relating to purchasing issues." Tex. Gov't Code § 2155.076(a). The statute further mandated that the rules "include standards for maintaining documentation about the purchasing process to be used in the event of a protest." *Id.*

Even though such procedures and rules for resolving protests like Wellpoint's have been developed and adopted (unlike the quality-of-care and cost-efficiency benchmarks that are more than a decade overdue), Wellpoint has been denied an effective protest right. The Commissioner's failure to provide Wellpoint with the requested information—to which Wellpoint is statutorily entitled—in time for Wellpoint to submit its protest of the intended contract awards deprives Wellpoint of an effective protest right, especially where, as here, a protest under the existing protest procedures must contain "a specific identification of the statutory or regulatory provision that the protestant alleges has been violated," "a specific description of each act alleged to have violated the statutory or regulatory provision identified in the

54

protest," and "a precise statement of the relevant facts . . . ." 1 Tex. Admin. Code § 391.305; *see also id.* § 391.303(b) ("A respondent may protest a solicitation, response evaluation, or contract award if the respondent is able to specifically identify a statutory or regulatory provision that HHS allegedly violated.").

As the record shows, the Commissioner's failure to promptly produce PIA information deprived Wellpoint of the ability to timely marshal a meaningful protest of the intended contract awards supported by critical documents and information about the procurement—to which Wellpoint was statutorily entitled—so that Wellpoint could have the opportunity to be heard at a meaningful time and in a meaningful manner under the promulgated protest procedures. To no one's surprise, HHSC's Deputy Executive Commissioner denied Wellpoint's protest of the intended contract awards for lack of supporting information (8 RR 104-05; P. Ex. 159). Adding insult to injury, she also outright refused to consider any protest supplements, even those based on subsequently discovered information (5 RR 153-54, 197-98; 8 RR 90-91; P. Ex. 159 [n.1])—ignoring the express carveout in the protest procedures for considering an untimely protest when "good cause for delay is shown" or if it "raises issues that are significant to HHSC's procurement practices or procedures in general." 1 Tex. Admin. Code § 391.307(d)(1).

While the Commissioner contends the record doesn't show how the lack of information prejudiced Wellpoint in the protest process, having stated the statutory duty to promptly produce responsive PIA information—which Wellpoint promptly requested and was undisputedly entitled to use to support its protest, and that others had been given earlier access to and during the critical stage of the oral presentations, creating an unlevel playing field and destroying the integrity of the procurement—it is nonsensical to require Wellpoint to show how it could have been even more prejudiced than it already was under the circumstances here.

It is likewise nonsensical to require Wellpoint to exhaust the protest appeal, which is limited in scope to review of the Deputy Executive Commissioner's determination, 1 Tex. Admin. Code § 391.307(d), before bringing its ultra vires claim in court when its complaint is that the Commissioner acted ultra vires in depriving Wellpoint of a meaningful protest process by failing to promptly produce PIA information so that there could be a meaningful protest—that could then be meaningfully reviewed under the protest appeal procedure. Under the circumstances here, the specter of "any meaningful agency appeal process" was a nullity from the start. Moreover, the Commissioner's position that a meaningful agency appeal process might have resulted in an outcome favoring Wellpoint had it been allowed to run its course

56

conflicts with the Commissioner's position that Wellpoint's ultra vires claims fail because the Commissioner allegedly "complied with every applicable statutory requirement." Brief for Appellant 9. The Commissioner thus has already decided that she did nothing wrong. Her exhaustion argument is meritless.

### iii. *Wellpoint seeks only prospective relief.*

Wellpoint's petition shows that Wellpoint seeks prospective relief only (CR 4270-79). Wellpoint requested relief "to enjoin any further ultra vires actions on the STAR & CHIP procurement and intended contract awards, including the awarding, execution, and implementation of such STAR and CHIP contracts" as well as "relief compelling Defendant to comply with the applicable laws and rules for all future procurements and contract awards and to comply with the TPIA and provide vendors with access to information necessary to submit meaningful bid protests" (CR 4273). Wellpoint sought declarations regarding the past ultra vires actions as well as future actions regarding this procurement (CR 4275-76). As for the current procurement process, Wellpoint sought an injunction "to restrain Defendant from her *continuing* violations of the law as discussed [in the petition] and to enjoin any *further* action on the STAR & CHIP procurement, including the execution

and implementation of the intended contract awards" (CR 4276). Nowhere did Wellpoint seek an order to restart the procurement (CR 4276-80).

Granting Wellpoint its requested relief does not require a "redo" or canceling the procurement. Wellpoint does not ask that the court order the Commissioner to restart the procurement process. State law may require that the Commissioner do so, but complying with any such duty is up to her.

*iv. Wellpoint asserted other valid ultra vires claims.*

Wellpoint adopts arguments of Superior Health Plan Inc. and of Cook Children's Health/Texas Children's Health Plan explaining other grounds for the ultra vires claims it asserted (CR 4270-79). Tex. R. App. P. 9.7.

**B. Equity favors Wellpoint—and the citizens of Texas.**

The Commissioner's argument that the equities favor her position—that the injury to the State and the public outweighs the irreparable injury to Wellpoint—has at least two fatal flaws that doom her argument.

*a. Unchallenged findings of irreparable harm support relief.*

The first flaw is that the Commissioner nowhere directly challenges the sufficiency of the evidence to support the irreparable harm findings.

The district court found irreparable injury to Wellpoint—a component of the temporary injunction standard. *See State v. City of Austin*, 714 S.W.3d 247, 253 (Tex. App. [15th Dist.] 2025, pet. filed). The court found Wellpoint would incur irreparable injury through, at minimum:

58

- Potential reduction or relocation of its workforce.

- Poaching of highly-trained employees by other MCOs.

- Difficulty maintaining its provider network.

- Loss of investments in service areas and partnerships.

(CR 5881). The Commissioner directly challenges none of those findings. She argues that Wellpoint cannot "show" it will suffer irreparable harm. Brief for Appellant 47. Yet according to these unchallenged findings, Wellpoint made that showing; Wellpoint's President and CEO, Greg Thompson, testified at length about these imminent harms (8 RR 92-96). "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). This component of the temporary injunction standard—which includes findings that Wellpoint "has already suffered" harm—is firmly established.

### b. The public is receiving competent, uninterrupted service.

The second flaw is that the Commissioner nowhere specifies evidence of concrete harm to the public from the temporary injunction, and evidence conclusively establishes the contrary—namely, it shows that the public will be receiving uninterrupted and competent STAR and CHIP services.

First of all, the Commissioner has twice agreed to obey this injunction during this lawsuit—once by a Rule 11 agreement in the district court before the hearing (CR 2626-49; Supp. RR 32-33) and by a Rule 6.6 agreement in

59

this Court. Jt. Motion to Abate Ex. A (Oct. 29, 2024). The resulting delay in the procurement extended for months, but the Commissioner has thereby conceded that the State and the public can tolerate the delay.

Second, the Commissioner has extended the current MCO contracts in order to continue providing STAR and CHIP services; the MCOs currently providing STAR and CHIP services are doing so under contract extensions due to cancellation of prior procurements (5 RR 180-81; 8 RR 96-97). So it's simply not true that "the injunction interferes with the entire statewide implementation of the STAR and CHIP programs." Brief for Appellant 45.

Third, Wellpoint received from the Commissioner the fifth highest weighted score of all MCOs in the STAR and CHIP procurement (P. Ex. 198 [3]). Implicit in the Commissioner's argument in this appeal is that this is an assessment by her that Wellpoint "provides the best value to the agency" in this way. Tex. Gov't Code § 2155.144(c). Wellpoint's score and the Commissioner's proposed award of contracts to Wellpoint confirm that Wellpoint's continued services will benefit, not harm, the public (P. Ex. 95).

Nor is there anything in the record that shows that Wellpoint or the other MCOs currently serving STAR and CHIP recipients under existing contracts are injuring the public or costing Texas more money. At bottom, this lawsuit is not, as the Commissioner claims, "barring the State from procuring

necessary services for the most vulnerable Texans." Brief for Appellant 1. Rather, it is ensuring continuity of high-quality care for program beneficiaries and adherence to the procurement laws and procedures that the legislature intended the Commissioner follow.

The Commissioner seeks to avoid this reality by arguing that the public interests are merged with her interests. *Id.* 49. The argument begs the question: is the Commissioner acting in the public interest, i.e., was she acting outside the legislature's directives? The Supreme Court of Texas has stated: "Requiring the government to follow the law benefits everyone." *In re State*, 711 S.W.3d 641, 648 (Tex. 2024). The question in this suit is whether the Commissioner is following the law—it's an ultra vires lawsuit. So it's begging the question for the Commissioner to assert that her position on the merits of these ultra vires claims merges with the public interest, because these claims, ipso facto, seek to prove she is not acting in the public interest—but rather is acting beyond her legal power, contrary to the public interest.

 *c. According to the Commissioner's own arguments, an injunction would not harm anyone.*

According to the Commissioner, no one has a right to receive a government contract merely by participating in the procurement process. *See* Brief for Appellant 35 (asserting that the MCO plaintiffs "lack a cognizable liberty or property interest in being awarded a government contract"); *id.* 46

61

(arguing that the MCO plaintiffs "never had a right to a new contract"). Thus her arguments about the billions of dollars at stake address only the size of these publicly-funded healthcare programs, not the harm to anyone or the rights being withheld from anyone.

### d. *The district court rejected the Commissioner's arguments.*

The Commissioner's arguments—that equity favors her position—cannot form the basis for reversal. The district court rejected those arguments, the Commissioner did not conclusively establish the "facts" that she now proposes, and this Court's review is not trial de novo. And for all of the Commissioner's arguments about the harm to the sovereignty and state resources, the district court found no harm; it found that the Commissioner "previously delayed the RFP several times and was able to continue providing coverage through the current STAR & CHIP contracts by extending contracts in effect at the time" (CR 5882). This is another unchallenged finding.

### e. *Wellpoint is likely to succeed on the points raised herein.*

Wellpoint has shown it is likely to prevail on the merits of its ultra vires claims in at least the four ways discussed in detail herein: (i) application of the statutory scheme for awarding mandatory STAR/Medicaid contracts to non-Medicaid CHIP contracts, (ii) failure to develop statutorily-required quality-of-care and cost-efficiency benchmarks, (iii) failure to give contract award preference for meeting quality-of-care and cost-efficiency

benchmarks, and (iv) failure to afford a meaningful protest process. *See su-pra* section II.A, pp. 38-58.

## C.    The injunction satisfies Rule 683.

Rule 683 requires, in pertinent part, that a temporary injunction "shall set forth the reasons for its issuance" and "shall be specific in terms." Tex. R. Civ. P. 683. The temporary injunction states specific reasons for its issuance, providing a comprehensive listing of specific statutory requirements that the Commissioner ignored in the procurement (CR 5877-78). It does not merely state that the Commissioner "acted ultra vires in the procurement" at issue. The injunction states that the Commissioner has acted and will act ultra vires in "awarding, executing, and implementing the contracts" arising out of the STAR and CHIP procurement RFP (CR 5876), and then explains how.

It's difficult to know how one could improve the temporary injunction in this regard. One element of an ultra vires claim is "authority giving the official some (but not absolute) authority to act." *McRaven*, 508 S.W.3d at 239. The injunction cites each legal authority at issue—e.g., Texas statutes, constitutional provisions, and administrative rules—one could hardly be more specific. The other element of the claim is that the official acted outside her authority or "failed to perform a ministerial duty." *Matzen*, 659 S.W.3d at 388. Of the thirteen ultra vires actions found, at least eleven involve a

63

failure to act (CR 5877-78). Having stated the statutory duty, it's nonsensical to require the injunction to detail a negative, i.e., listing the ways the official could have, but failed to, perform a required act.

As for the other ultra vires actions the trial court found, the injunction identifies the Commissioner's improper affirmative acts (and cites the statutes). Specifically, the Commissioner "wrongfully disclosed the RFP proposals of Plaintiffs and other respondents" and "award[ed] mandatory CHIP contracts to MCOs to which Defendant intends to award mandatory STAR contracts . . . ." (CR 5877-78). So the temporary injunction is not defective in failing to state a "nonconclusory reason for issuing." Brief for Appellant 52. Nor does the Commissioner's case law cited require that. Rather, it tells a trial court that "the reasons it believes the applicant will suffer injury . . . must be specific and legally sufficient, and not mere conclusory statements." *Indep. Cap. Mgmt. LLC v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.). It's the reason the applicant will suffer injury for which this case imposes a specificity requirement.

And the injunction satisfies that standard, with a detailed listing of the harms Wellpoint will suffer if the ultra vires acts are not enjoined (CR 5881-82). Neither the rule nor the case law requires that the injunction interpret the statutes at issue, or make fact findings on "the reasons for its issuance,"

or explain away contrary arguments, as the Commissioner suggests. Brief for Appellant 52-53. This is not a case, as in *In re Luther*, 620 S.W.3d 715 (Tex. 2021), where the defendant could not determine how to avoid contempt, due to "the temporary restraining order's lack of specificity regarding the conduct to be restrained." *Id.* at 724. Nor does the Commissioner complain that the lack of specificity makes it impossible for her to know how to comply with this injunction. The comprehensiveness of her principal brief in this appeal says otherwise; it indicates that she well understands the basis for the injunction and what it enjoins.

## D. Excluding the Commissioner's hearsay was proper and, in any event, harmless.

Exclusion of the scoring rubrics "which described, among other things, what factors HHSC considered in evaluating each bid," Brief for Appellant 54, was entirely proper, but at worst it could only be harmless error, because those scoring rubrics do not concern the Commissioner's ultra vires conduct in (i) failing to develop the quality of care and cost-efficiency benchmarks pursuant to Government Code § 536.052(b) (recodified as § 543A.0052(b)), (ii) failing to give contract award preference for meeting quality-of-care and cost-efficiency benchmarks, pursuant to Government Code § 536.052(d) (recodified as § 543A.0052(d)), (iii) wrongly relying on Health and Safety Code § 62.053 to award the non-Medicaid CHIP contracts under the regulatory

scheme for awarding mandatory Medicaid contracts under Government Code § 533.004 (recodified as § 540.0206), or (iv) failing to afford Wellpoint a meaningful protest process, violating the Texas Constitution's due course of law guarantee. *See supra* section II.A, pp. 38-58.

This Court may reverse only if it finds harmful error. Tex. R. App. P. 44.1(a)(1). Appellate courts do not presume that error is harmful. *See, e.g.*, *Harris Cnty. v. Smith*, 96 S.W.3d 230, 235 (Tex. 2002) ("[T]he dissent suggests that we must presume harm here in order to reverse. We disagree."). In determining whether error was harmful, this Court "must consider the entire record of the case as a whole." *Horton v. Kansas City S. Ry.*, 692 S.W.3d 112, 138 & n.23 (Tex. 2024) (citing *In re Est. of Poe*, 648 S.W.3d 277 (Tex. 2022)).

The Commissioner offers no specific argument as to how, precisely, the proffered evidence relates to the above four issues. The Commissioner argues only, in general, that the excluded exhibits (a) "show that the Commissioner acted within her statutory authority in awarding the contracts" and that they were "crucial to deciding the question of whether the procurement process complied with applicable statutes." Brief for Appellant 54, 57. But absent specification of what, precisely, the exhibits addressed in that regard—e.g., failing to develop or implement benchmarks, unlawfully awarding mandatory CHIP contracts, or failing to afford a meaningful protest process—

66

Wellpoint can only respond with a general denial of the exhibits' relevance. In short, the appellant has the burden to demonstrate error was harmful, but the Commissioner has not adequately briefed this issue.

But it doesn't matter, because this appeal concerns whether the Commissioner's plea to the jurisdiction was improperly denied and the temporary injunction findings constitute an abuse of discretion, i.e., whether any evidence supports the trial court's decision. Unless the excluded evidence would conclusively establish the matter, their admission couldn't negate the evidence *supporting* the denial of the plea and the temporary injunction findings. In short, excluding the documents cannot be considered action that "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1).

In the trial court, the Commissioner argued that the scoring rubrics had relevance to just one ultra vires action: "This goes directly to their claim about the failure to document . . . They are squarely relevant as to what HHSC considered when giving out these scores . . . This goes squarely to what HHSC considered in their lawful discretion to give these awards . . . documents . . . that go directly to 2155.144(c), the plaintiffs' allegation of failure to document" (8 RR 151-52, 155). Yet that narrow focus doesn't encompass the other twelve ultra vires acts found (CR 5877-78). For example, the court found the

Commissioner developed no quality-of-care and cost-efficiency benchmarks (CR 5877). That failure occurred long before the STAR and CHIP RFP and the scoring. It's undisputed the Commissioner developed no such benchmarks; the excluded documents don't refute that. So the documents could have no bearing on findings about that matter—meaning their exclusion is harmless in regard to at least one, undisputed ultra vires act which alone would support the injunction and the denial of the plea to the jurisdiction.

Moreover, the record shows that during their depositions, the Commissioner's representatives—Ramirez and Molina—testified that they lacked knowledge of all the scoring rubrics (having only reviewed a few of them) (8 RR 139-50; P. Ex. 320). Given the Commissioner's failure to proffer any witness with personal knowledge at the hearing to lay a proper foundation for all of the proffered records, and the Commissioner's failure to produce a representative prepared to testify about the scoring rubrics during depositions, under these circumstances, excluding the exhibits was within the court's discretion under the discovery and evidence rules and was proper, and in any event, harmless.

## Prayer

Wellpoint Insurance Company asks this Court to affirm the trial court's ruling and award Wellpoint its costs, if any. Tex. R. App. P. 43.4.

Respectfully submitted,

*/s/ Michelle Y. Ku*

Michelle Y. Ku
Texas Bar No. 24071452
mku@foley.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@foley.com
Foley & Lardner LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Tel:   214.999.3000
Fax:  214.999.4667

Robert F. Johnson III
Texas Bar No. 10786400
rjohnson@foley.com
Foley & Lardner LLP
600 Congress, Suite 3000
Austin, Texas 78701
Tel:   512.542.7000
Fax:  512.542.7100

Counsel for
WellPoint Insurance Company

Of counsel:
Benjamin J. Grossman
Florida Bar No. 92426
bjgrossman@foley.com
106 E. College Ave., Suite 900
Tallahassee, Florida 32301
Tel:   850.222.6100
Fax:  850.561.6475

## Certificate of Compliance

I certify that this document contains **12,712** words, not counting those parts of the document excluded by TRAP 9.4(i).

*/s/ Stacy R. Obenhaus*
Stacy R. Obenhaus

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 108914356
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee Wellpoint Insurance Company
Status as of 12/10/2025 7:20 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Michaelle Peters | | mpeters@scottdoug.com | 12/9/2025 10:03:13 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 12/9/2025 10:03:13 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 12/9/2025 10:03:13 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 12/9/2025 10:03:13 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 12/9/2025 10:03:13 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| David Johns | | david@cobbjohns.com | 12/9/2025 10:03:13 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 12/9/2025 10:03:13 PM | SENT |
| Victor Hernandez | | victor.hernandez@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 12/9/2025 10:03:13 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 12/9/2025 10:03:13 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 12/9/2025 10:03:13 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 12/9/2025 10:03:13 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 12/9/2025 10:03:13 PM | ERROR |
| Trisha Marino | | tmarino@perkinscoie.com | 12/9/2025 10:03:13 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 12/9/2025 10:03:13 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 108914356
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee Wellpoint Insurance Company
Status as of 12/10/2025 7:20 AM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 12/9/2025 10:03:13 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 12/9/2025 10:03:13 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |
| Kayla Ahmed | | kayla.ahmed@nortonrosefulbright.com | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 12/9/2025 10:03:13 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 12/9/2025 10:03:13 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 12/9/2025 10:03:13 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 12/9/2025 10:03:13 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Superior Healthplan Inc.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 108914356
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee Wellpoint Insurance Company
Status as of 12/10/2025 7:20 AM CST

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 12/9/2025 10:03:13 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 12/9/2025 10:03:13 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 12/9/2025 10:03:13 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |
| Mohmed Patel | | mohmed.patel@oag.texas.gov | 12/9/2025 10:03:13 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Ku on behalf of Michelle Ku
Bar No. 24071452
mku@foley.com
Envelope ID: 108914356
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee Wellpoint Insurance Company
Status as of 12/10/2025 7:20 AM CST

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason R.LaFond | | jlafond@scottdoug.com | 12/9/2025 10:03:13 PM | SENT |
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 12/9/2025 10:03:13 PM | SENT |